IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMANUEL L. GILMORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-145 Erie |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

McLAUGHLIN, J.

      Plaintiff, Emanuel L. Gilmore, (hereinafter "Plaintiff" or "Gilmore"), commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq,* and § 1381 *et seq.*  Gilmore filed applications for DIB and SSI on March 26, 2003, alleging that he was disabled due to lower back pain and hypertension as of June 8, 2002 (Administrative Record, hereinafter "AR", 60-62; 74; 170-173).  His applications were denied, and he requested a hearing before an administrative law judge ("ALJ") (AR 43-48; 177-180).  Following a hearing held July 1, 2004, the ALJ found that Gilmore was not entitled to a period of disability or disability insurance, and was not eligible for SSI benefits (AR 21).  Gilmore's request for review by the Appeals Council was denied (AR 5-8), rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision.  Presently pending before the Court are cross-motions for summary judgment.  For the reasons that follow, we will deny both motions.

### I. BACKGROUND

      Gilmore was born on March 2, 1951, and was fifty-three years old on the date of the ALJ's decision (AR 16; 60).  He has a high school equivalency diploma, and past work experience as a plater/heat treater (AR 75; 80).

      On August 13, 2002, Gilmore was seen by Joseph Thomas, M.D., for complaints of left

shoulder pain radiating down his left leg (AR 169). Dr. Thomas noted that he had undergone an interbody fusion at the L4-5 level with Ray cages (AR 169). Gilmore was diagnosed with left shoulder pain secondary to a rotator cuff tear (AR 169). An epidural injection was administered which provided him with complete relief and a good range of motion (AR 169). Dr. Thomas prescribed pain medication and a muscle relaxant, and recommended a CT scan of the lumbar spine (AR 169). A CT scan of Gilmore's lumbosacral spine conducted on August 23, 2002, showed degenerative disc disease of the L5-S1 interspace, and post operative changes of the anterior spinal fusion (AR 139).

Gilmore was seen by John Baniewicz, M.D., on March 21, 2003, who noted a past history of hypertension, chronic low back pain, degenerative disc disease, and herniated disc surgery (AR 152). Dr. Baniewicz found no back tenderness on palpation, and Gilmore was able to straight leg raise to 90 degrees bilaterally (AR 152). He was diagnosed with hypertension, a history of hyperlipidemia, chronic low back pain, and history of colon cancer (AR 152). Dr. Baniewicz restarted his blood pressure medication, refilled his Soma for his back pain, and ordered lumbar spine x-rays (AR 152). An x-ray conducted on March 24, 2003 showed some reduction in the L5-S1 disc space and some post operative changes at the L4-L5 level (AR 147).

Gilmore was treated at Community Health Net beginning on June 9, 2003 for complaints of back pain (AR 168). On June 23, 2003, he complained of low back pain radiating to his lower extremities (AR 167). Physical examination revealed tightness in the lumbar spine area, with limited range of motion on forward flexion at the waist (AR 167). He was assessed with lower back pain and hypertension, prescribed Ultram and referred to pain management (AR 167).

On June 24, 2003, Gilmore underwent a consultative evaluation performed by John C. Kalata, D.O., pursuant to the request of the Commissioner (AR 128-132). Gilmore reported a history of disc surgery, which included a laminectomy and spinal fusion (AR 128). He claimed he suffered from low back pain which radiated to his buttocks and legs and muscle relaxants provided no relief (AR 128). Dr. Kalata reported that Gilmore had a normal station and gait, but had mild difficulty getting on and off the exam table (AR 131). On physical examination, Gilmore exhibited full range of motion in his upper and lower extremities, although he had lower lumbar discomfort upon approaching 90 degrees leg raising (AR 131). Examination of his back

produced discomfort at the lower lumbar area (AR 131). He had full motor and sensory strength (AR 131). He was assessed with, *inter alia*, discogenic disease, lumbar spine, with radiation to the lower extremities (AR 131).

Dr. Kalata completed a medical source statement of Gilmore's ability to perform work-related physical activities, and opined that he could frequently lift and carry two to three pounds; occasionally lift and carry ten pounds; stand for one hour or less in an eight hour day; had unlimited sitting capacity; had push/pull limitations in the lower extremities; and could occasionally bend, kneel and climb, but could never stoop, crouch, or balance (AR 135-136). Dr. Kalata listed "low back pains" as his supportive medical findings (AR 135-136).

Gilmore returned to Community Health Net on July 24, 2003 and reported continuing back pain (AR 166). He exhibited tenderness of the lumbosacral spine at the old surgery site on physical examination (AR 166). He returned on July 30, 2003 complaining of back pain and was seen by Namiral Jamshed, M.D. (AR 166). Dr. Jamshed found mild lower back tenderness and decreased range of motion (AR 165). He was prescribed Vicodin and switched to a different muscle relaxant (AR 165). Dr. Jamshed found his blood pressure was under control (AR 165).

On August 29, 2003, Gilmore reported he had fallen down the stairs but sustained no injuries, and had no other complaints (AR 164). Dr. Jamshed reported that he was doing well on the Vicodin, and had no tenderness on physical examination (AR 164). He was assessed with chronic low back pain and his medications were refilled (AR 164). On September 4, 2003, Gilmore presented with disability forms to be completed, and Dr. Jamshed's treatment entry noted that he was "doing well" (AR 163).

Treatment notes dated November 5, 2003 showed that Gilmore reported his back pain persisted and he was taking Vicodin (AR 162). Dr. Levy opined that he was able to work but could not perform heavy lifting or bending (AR 162).

Gilmore returned to Dr. Jamshed on January 29, 2004 for follow up (AR 160). Dr. Jamshed reported that he continued to have chronic back pain, but it was "very well controlled" with medication (AR 160). Dr. Jamshed noted that Gilmore had applied for disability, and observed that Dr. Levy had previously opined that he was employable with accommodations (AR 160). Gilmore had no complaints, and was assessed with chronic low back pain, controlled

hypertension and hyperlipidemia (AR 160).

On February 25, 2004, Dr. Jamshed reported that Gilmore was in no acute distress (AR 159). His medical assessment forms were discussed, and Dr. Jamshed noted that he gave Gilmore a "physical limitation" of less than 30 hours a week with health sustaining medications needed, but did not feel that he was completely unemployable (AR 159).

On a telephone message dated March 17, 2004, Gilmore claimed that his back and shoulder were not getting any better, and he requested a referral to a neurologist (AR 158). On March 30, 2004, Dr. Jamshed reported that Gilmore's chronic low back pain was well controlled with Lortab, and he had no other complaints (AR 157).

Gilmore returned to Dr. Jamshed on April 28, 2004, complaining of muscle spasms (AR 155). Dr. Jamshed reported tenderness over the top of the sacrum area and a decrease in his knee reflex on the left side (AR 155). He was assessed with L4-5 possible pathology, with well controlled pain on Lortab, and well controlled high blood pressure (AR 155). Dr. Jamshed opined that Gilmore's work hours were to be 30 hours per week or less (AR 155). Finally, on June 1, 2004, Gilmore complained of lumbar pain and Lortab was prescribed (AR 154).

Gilmore and Joseph Kuhar, a vocational expert, testified at the hearing held by the ALJ on July 1, 2004 (AR 24-40). Gilmore testified that he suffered from pain in his lower back and suffered from back spasms approximately three to four times per week, but pain medication helped (AR 31, 35). To further alleviate the pain, he used a heating pad at times and would lie down three to four hours per day (AR 32; 35). He claimed his back pain kept him from sleeping through the night and he had a fair energy level during the day (AR 32). Gilmore further testified that his physician limited him to lifting twenty pounds (AR 32). He was unable to stand for extended periods due to shooting pain down the back of his legs, but estimated he was able to stand for fifteen minutes to one and a half hours before he needed to sit down (AR 32-33). He was unable to sit for extended periods due to stiffness and pain, and was able to walk approximately three and a half blocks before resting (AR 33). Gilmore testified that his blood pressure was controlled with medication (AR 31).

The ALJ asked the vocational expert if work existed for an individual of Gilmore's age, education, and work history, who was limited to light work with no more than occasional

climbing, balancing, stooping, kneeling, crouching or crawling (AR 38). The vocational expert testified that such an individual could perform work as a counter clerk, gate guard, and courier/runner (AR 38-39). The vocational expert further testified that if such individual was able to lift ten to twenty pounds occasionally and was limited to standing and/or walking for only an hour to an hour and a half per day, such individual would be restricted to sedentary work (AR 39).

Following the hearing, the ALJ issued a written decision which found that Gilmore was not entitled to a period of disability, DIB or SSI within the meaning of the Social Security Act (AR 15-21). His request for an appeal with the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 5-8). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that Gilmore met the

disability insured status requirements of the Act (AR 20).  SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen*, 482 U.S. at 141.  If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.*  If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.

The ALJ resolved Gilmore's case at the fifth step.  At step two, the ALJ determined that his back disorder and hypertension were severe impairments, but determined at step three that he did not meet a listing (AR 16-17).  At step four, the ALJ determined that he could not return to his past work, but retained the residual functional capacity to perform light work with no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling (AR 17).  At the final step, the ALJ determined that Gilmore could perform the jobs cited by the vocational expert at the administrative hearing (AR 19).  The ALJ additionally determined that his allegations regarding his limitations were not totally credible (AR 20).  Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Gilmore challenges the ALJ's decision on the grounds that his residual functional capacity ("RFC") assessment is not supported by substantial evidence since the ALJ erred in his

evaluation of the medical evidence.

"'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). In making this determination, the ALJ must consider all evidence before him. *Burnett*, 220 F.3d at 121. Social Security Ruling ("*SSR*") 96-5p provides:

> The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of the evidence.

*SSR* 96-5p (1996), 1996 WL 374183 *5. Gilmore claims that in assessing his RFC, the ALJ failed to address Dr. Jamshed's opinion that he was limited to work of less than thirty hours per week in violation of *Cotter v. Harris*, 642 F.2d 700 (3rd Cir. 1981).

The Third Circuit explained in *Cotter* that the ALJ has a duty "to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits." *Id*. at 704. The ALJ must articulate in writing his or her decision and findings of fact and give "a statement in support thereof." *Id*. Further, the ALJ must mention relevant evidence which clearly supports the claim and give his or her reasons for rejecting such evidence. *Id*. at 705. In the absence of such an indication, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id*. The Third Circuit has reiterated this obligation, stating that "the ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Social Security Admin.*, 181 F.3d 429, 433 (3rd Cir. 1999) (citations omitted). This requirement is necessary (1) so that the appellate court can perform its function without usurping administrative functions; (2)

to assure "more careful administrative consideration"; and (3) so that the parties can plan their cases for judicial review. *Cotter*, 642 F.2d at 704-05.

Here, Dr. Jamshed opined on February 25, 2004 that Gilmore had a physical limitation of less than 30 hours a week with health sustaining medications needed, but did not feel that he was completely unemployable (AR 159). On April 28, 2004, Dr. Jamshed again opined that Gilmore's work hours were to be 30 hours per week or less (AR 155).[1] In his opinion, the ALJ states that: [t]he only limiting report in the record is that of John Kalata, D.O. ..." (AR 17). Given Dr. Jamshed's reports of February 25, 2004 and April 28, 2004, this statement is clearly at odds with the record. The ALJ's failure to have addressed these reports and explain the basis for their rejection runs afoul of the dictates of *Cotter* discussed above. *See, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 43-44 (3rd Cir. 2001) (ALJ's failure to explain his implicit rejection of evidence or even acknowledge its presence was error); *Williams v. Apfel*, 98 F. Supp. 2d 625, 631 (E.D.Pa. 2000) (ALJ is required to provide not only an expression of the evidence which

---

[1] In order to show that a claimant is in fact capable of undertaking jobs that exist in the national economy, the Commissioner must prove that the claimant retains the residual functional capacity to work on a "regular and continuing basis." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 60 (3rd Cir. 1988) (quoting *Kangas v. Bowen*, 823 F.2d 775, 777 (3rd Cir. 1987) (citing 20 C.F.R. § 404.1545(b))). Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, defines "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, 1996 WL 374184 at *2. Additionally, SSR 98-8p states:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how and material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 98-8p, 1996 WL 374184 at *7 (footnote omitted).

8

supports the result, but also some indication of the evidence rejected); *Rutherford v. Barnhart*, 2003 WL 22428536 at *3 (E.D.Pa. 2003) (ALJ should have explained why he discounted the medical evidence he rejected). Accordingly, we are of the opinion that a remand is appropriate.[2]

### IV. Conclusion

For the foregoing reasons, both motions for summary judgment shall be denied. The matter shall be remanded to the ALJ for further proceedings consistent with this Memorandum Opinion. On remand, the ALJ is directed to address Dr. Jamshed's opinions consistent with the dictates of *Cotter*. The ALJ is free to seek additional evidence and/or call a vocational expert if he feels it is necessary. An appropriate Order follows.

---

[2]Gilmore also argues that the ALJ erred in improperly rejecting Dr. Kalata's opinion and erred in his credibility determination. We need not reach these arguments however, since we have concluded that a remand is necessary.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EMANUEL L. GILMORE,<br><br>Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 05-145 Erie |

**ORDER**

______AND NOW, THIS 3rd day of February, 2006, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [Doc. No. 8] is DENIED and Defendant's Motion for Summary Judgment [Doc. No. 10] is DENIED. The case is hereby REMANDED to the Commissioner of Social Security for further proceedings consistent with the accompanying Memorandum Opinion.

The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.